*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**DeShaun L. WELLS, Airman**
United States Air Force, Appellant

**No. 23-0219**
Crim. App. No. 40222

Argued March 6, 2024—Decided September 24, 2024

Military Judges: Charles E. Wiedie (arraignment), Willie J. Babor (warrant application), and Matthew N. McCall.

For Appellant: *Captain Samantha M. Castanien* (argued); *Megan P. Marinos*, Esq. (on brief); *Major Kasey W. Hawkins.*

For Appellee: *Captain Tyler L. Washburn* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel James P. Ferrell*, and *Mary Ellen Payne*, Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS and Judge JOHNSON joined. Judge HARDY filed a dissenting opinion, in which Chief Judge OHLSON joined.

————————

Judge SPARKS delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted at a general court-martial by a panel of officer and enlisted members of assault consummated by a battery, obstructing justice, and extramarital sexual conduct, in violation of Articles 128, 131b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 931b, 934 (2018). The members sentenced Appellant to a bad-conduct discharge, 255 days of confinement, two months of restriction to the limits of Royal Air Force Lakenheath, United Kingdom, two months of hard labor without confinement, forfeiture of all pay and allowances, and reduction to grade E-1. The convening authority disapproved the adjudged restriction and hard labor without confinement, but otherwise took no other action on the sentence. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence. *United States v. Wells*, No. ACM 40222, 2023 CCA LEXIS 222, at *30, 2023 WL 3597239, at *11 (A.F. Ct. Crim. App. May 23, 2023) (unpublished).

We granted review of the following issue:

> Is Appellant's conviction for a Clause 2, Article 134, UCMJ, offense legally insufficient as to the terminal element?

*United States v. Wells*, 84 M.J. 113 (C.A.A.F. 2023) (order granting review).

As will be discussed below, we hold that Appellant's conviction is legally sufficient.

## I. **Background**

The lower court summarized the relevant background as follows:

> In November 2019—while he was married—Appellant met a British national, BF, through the electronic dating application Tinder. BF testified that Appellant first told her that he was divorced, but a week later said he was actually in the process of getting divorced. Appellant and BF entered a dating relationship, to include sexual intercourse, which lasted several months. BF

spent weekends at Appellant's home and they discussed marriage and having children together. BF testified that during the relationship Appellant also met BF's parents. In January 2020, BF discovered Appellant was not actually in the process of divorcing his spouse. BF contacted the Appellant's command's public affairs office via email and reported, *inter alia*, that Appellant lied to her about being divorced. During cross-examination, BF stated her sexual relationship with Appellant did not make her think less of the Service.

At trial, and in response to circuit trial counsel's questions, BF testified about an intimate video of her and Appellant:

Q.     [D]id you ever come to learn about videos that he may have still had in his possession after your relationship was over?

A.     Yes.

Q.     Can you talk to us a little bit about that?

A.     It was towards the end of last year. I was having loads of Brandon[, UK,] people request me on Instagram, local girls from the area, and I'm not originally from the area, so it was a bit concerning to me. So I ended up messaging one of them and I was like, do I know you because I was concerned that something was going around about me. She had explained that she had also dated [Appellant]. She had told me that he had been sharing intimate videos of me and pictures of me with people. That's how I came to light on the videos that were being shared.

BF identified the person she messaged regarding the video as LW. LW, who also had engaged in a romantic relationship with Appellant, met with BF in person. LW described to BF a video that included BF and "mentioned a bathtub." BF testified she "knew exactly what time that was because there was only one time we had had sex in the bath." LW also testified and explained Appellant showed her the video and

that afterwards she contacted BF. Later, BF and
LW went to Appellant's home to confront him.
Appellant was not home; however, Appellant's
wife was present and they addressed the video
with her instead. The video of Appellant and BF
engaging in sexual conduct was also uploaded to a
publicly accessible pornographic website and
viewed at least 817 times.

*Wells*, 2023 CCA LEXIS 222, at *8-10, 2023 WL 3597239,
at *3-5 (alterations in original) (footnotes omitted).

## II. Analysis

Article 134, UCMJ, creates three different types of
crimes, commonly referred to as Clauses 1, 2, and 3
offenses. *Manual for Courts-Martial, United States* pt. IV,
para. 91.c.(1) (2019 ed.) (*MCM*). Clause 1 offenses involve
disorders and neglects to the prejudice of good order and
discipline in the armed forces. *Id.* Clause 2 offenses involve
conduct of a nature to bring discredit upon the armed
forces. *Id.* Clause 3 offenses involve noncapital crimes or
offenses which violate federal law, including law made
applicable through the Federal Assimilative Crimes Act.
*Id.*

For Appellant to be found guilty of the offense of
extramarital sexual conduct, charged under Clause 2, the
Government was required to prove beyond a reasonable
doubt that Appellant: (1) wrongfully engaged in
extramarital conduct with BF; (2) Appellant knew at the
time that he was married to someone else; and (3) under
the circumstances, the conduct was of a nature to bring
discredit upon the armed forces. *MCM* pt. IV, para. 99.b.
We granted review to consider whether the evidence was
legally sufficient to establish the third element.

Appellant argues that his conviction is legally
insufficient because the only direct evidence at trial on
Clause 2 demonstrated that the service was not discredited
by his extramarital sexual conduct. We perform a de novo
review of legal sufficiency issues. *United States v. Richard*,
82 M.J. 473, 476 (C.A.A.F. 2022). Legal sufficiency is
evaluated by determining whether, after viewing the

evidence in the light most favorable to the prosecution, any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

It is well established that conviction of a criminal offense under the Constitution requires proof of every element of the offense beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *In re Winship*, 397 U.S. 358, 361-64 (1970); *United States v. Neal*, 68 M.J. 289, 298 (C.A.A.F. 2010). The use of conclusive presumptions to establish the elements of an offense is unconstitutional because such presumptions conflict with the presumption of innocence and invade the province of the trier of fact. *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979).

According to Appellant, *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011), cannot be relied upon to determine the legal sufficiency of the Clause 2 offense in his case because nothing in the record, other than the fact of the activity itself in that case, was required to find the conduct service discrediting. Thus, echoing the *Phillips* dissent, he argues that the terminal element in *Phillips* was conclusively presumed from the charged conduct itself. In *Phillips*, the accused was caught in possession of child pornography during a search of his room by law enforcement looking for evidence pertaining to an unrelated larceny offense. *Id.* at 163-64 There was no testimony that the accused's conduct was service discrediting or that anyone other than the agents searching his room were even aware of his conduct. *Id.* at 164. This Court explained that the government is required to prove every element of an offense beyond a reasonable doubt and that it is improper to find the commission of an offense to be conclusively service discrediting. *Id.* at 165. We, however, rejected the notion that a conviction under a service discrediting theory requires proof of the public's knowledge of an accused's conduct. *Id.* Instead, this Court concluded: "The focus of clause 2 is on the 'nature' of the conduct, *whether the accused's conduct would tend to bring discredit on the armed forces if known by the public." Id.* at 165-66. We further explained that the government need

not prove anyone was aware of an accused's conduct or "to specifically articulate how the conduct is service discrediting." *Id.* at 166. Instead, the government must "introduce sufficient evidence of the accused's allegedly service discrediting conduct to support a conviction." *Id.* We also emphasized that "[w]hether conduct is of a 'nature' to bring discredit upon the armed forces is a question that depends on the facts and circumstances of the conduct." *Id.* Ultimately, we concluded a rational trier of fact could have found the accused's possession of child pornography to be service discrediting "had the public known of it." *Id.*

Even though Appellant asserts BF's testimony at trial revealed that her personal opinion of the armed forces was untarnished, we are not persuaded that the Government failed to prove the terminal element. Here, there was sufficient evidence for the trier of fact to determine beyond a reasonable doubt that Appellant's conduct under the facts and circumstances would tend to bring the service into disrepute if it were known. The evidence supports a finding that Appellant's sexual relationship with BF was neither private nor discreet and therefore tended to bring the service into disrepute. In fact, the evidence established Appellant showed a video of his extramarital sexual conduct to others and made it available to the general public to view on a website. As the video depicts Appellant engaging in intimate sexual acts with BF, it is strong evidence of the "open or notorious nature" of the extramarital conduct. BF's opinion does not operate to contradict or minimize the service discrediting nature of Appellant's conduct—her opinion merely reflects the opinion of one person. Considering our deferential review under the legal sufficiency standard, we conclude a rational trier of fact could have found Appellant's conduct service discrediting.

To buttress his insufficiency claim, Appellant contends that we should overturn *Phillips* because it was wrongly decided. According to Appellant, Clause 2, on its face, is unconstitutional because it permits conviction for per se service discrediting conduct and therefore cannot be used

as the basis to uphold the vitality of *Phillips* as a precedent. Although we believe that *Parker v. Levy*, 417 U.S. 733 (1974), established conclusively the constitutionality of Article 134, UCMJ, we will address this aspect of Appellant's argument.

When asked to overrule one of our precedents, we analyze the matter under the doctrine of stare decisis. *United States v. Blanks*, 77 M.J. 239, 241-42 (C.A.A.F. 2018). Stare decisis is the doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again. *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018). "[A]dherence to precedent is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Blanks*, 77 M.J. at 242).

Applying stare decisis is not an inexorable command, and we are not bound by precedent when there is a significant change in circumstances after the adoption of a legal rule, or an error in legal analysis. *Id.* In evaluating the application of stare decisis, we consider: "whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *Id.* (citation omitted) (internal quotation marks omitted).

For offenses under Article 134, UCMJ, the President has explained: " 'Discredit' means to injure the reputation of. This clause of Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." MCM pt. IV, para. 91.c.(3). The President further iterated service discrediting conduct in the context of extramarital conduct:

> Extramarital conduct may be Service discrediting, even though the conduct is only indirectly or remotely prejudicial to good order and discipline. "Discredit" means to injure the reputation of the

> armed forces and includes extramarital conduct that has a tendency, because of its open or notorious nature, to bring the Service into disrepute, make it subject to public ridicule, or lower it in public esteem. While extramarital conduct that is private and discreet in nature may not be service discrediting by this standard, under the circumstances, it may be determined to be conduct prejudicial to good order and discipline.

MCM pt. IV, para. 99.c.(1). This Court has stated that "[p]residential narrowing of the 'general' article through examples of how it may be violated is part of why Article 134, UCMJ," is not considered unconstitutionally void for vagueness. *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010) (citing *Levy*, 417 U.S. at 753-56). Further, it is this narrowing of the breadth of Article 134 through these presidential enumerations that provides servicemembers with fair notice of what conduct is subject to criminal sanction under the statute. Until the United States Supreme Court decides otherwise, Article 134, UCMJ, in its entirety, remains constitutional on its face.

Appellant's main contention as to why *Phillips* should be discarded as controlling precedent is that it sanctions per se service discrediting conduct, and as a result, the Government is unconstitutionally relieved of its burden to prove all elements of the charged offense beyond a reasonable doubt. Yet, *Phillips* expressly stated that so-called "conclusive presumptions" are impermissible. 70 M.J. at 165. Simply put, *Phillips* did not expressly or impliedly sanction such a presumption.

The instant case directly refutes Appellant's contention that the terminal element alone is sufficient to convict for Clause 2. Here, the members were told they had to determine beyond a reasonable doubt that Appellant's conduct was service discrediting. They were told that in making the determination, they must "consider all the facts and circumstances offered on the issue." They were properly instructed on criteria to use in making their determination. No reasonable panel that followed these instructions could have made a "per se" determination that

the mere fact of Appellant's extramarital sexual conduct was automatically service discrediting.

Given that *Phillips* expressly condemns conclusive presumptions and reaffirms that the Government must prove not only the offense itself, but also the nature of that offense beyond a reasonable doubt, the decision in *Phillips* is not unworkable or poorly reasoned. We have also considered the other factors affecting our application of stare decisis and conclude that they do not aid Appellant's argument. Consistent with our precedent, we reiterate that whether any given conduct violates Clause 2 is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any particular course of conduct.

### III. Judgment

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge HARDY, with whom Chief Judge OHLSON joins, dissenting.

Earlier this term, but after we granted review in this case, the Judge Advocate General of the Air Force certified *United States v. Rocha* to this Court for review. 83 M.J. 275 (C.A.A.F. 2023) (certificate for review). In that case, the appellant was convicted of violating Clause 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), for engaging in indecent acts with a childlike sex doll—conduct that a panel of members sitting as a general court-martial found to be of a nature to bring discredit upon the armed forces. *United States v. Rocha*, 84 M.J. 346, 347-48 (C.A.A.F. 2024). Although in this case Appellant urges this Court to overturn its prior decision in *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011), *Rocha*—an Article 134, Clause 2, case in which the government presented no evidence or argument in direct support of the terminal element—already provided the Court with the opportunity to reconsider its decision in *Phillips*. The Court declined to do so, and *Phillips* remains good law. It therefore remains the case that for convictions under Clause 2, Article 134, UCMJ, proof of the charged conduct itself "*may* be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that, under all the circumstances, it was of a nature to bring discredit upon the armed forces." *Id*. at 163. Nevertheless, I disagree with the majority's conclusion that *in this case* a rational trier of fact could have found Appellant's actions service discrediting beyond a reasonable doubt based on his conduct alone.

Common sense dictates that the military does not consider every act of extramarital sexual conduct by servicemembers to violate Clause 2 of Article 134, UCMJ; and that conclusion is confirmed by the President's guidance in the *Manual for Courts-Martial, United States* (*Manual* or *MCM*). The President expressly acknowledges that not all extramarital conduct is service discrediting and lists nine factors for commanders to consider when determining whether such conduct is criminal under Article 134, UCMJ. *MCM* pt. IV, para. 99.c.(1)(a)-(i) (2019 ed.). Yet the Government in this case made no attempt to persuade the panel that Appellant's extramarital conduct satisfied any

of these factors or was otherwise service discrediting. To the contrary, the *only* evidence presented to the panel directly with respect to the terminal element was the testimony of the coactor who stated that she did *not* hold Appellant's misconduct against the armed forces. Confronted with this record, I cannot say that the Government met its burden of proving each element of Article 134, UCMJ, beyond a reasonable doubt. I therefore respectfully dissent.

## I. *United States v. Phillips*

In *Phillips*, the Court held that in Article 134, Clause 2, cases, proof of the charged conduct *"may"* be sufficient to prove the terminal element. 70 M.J. at 163. The Court emphasized the word *"may,"* underscoring the fact that in some cases, additional evidence would be necessary to prove beyond a reasonable doubt that the charged conduct was of a nature to bring discredit upon the armed forces. Additionally, the Court stated that "whether any given conduct violates [Clause 2] is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any particular course of action." *Id.* at 165. Thus, in applying *Phillips* the Court must look at the underlying circumstances of the charged conduct—in this case, extramarital sexual conduct—to determine whether the service discrediting element has been proven beyond a reasonable doubt.

Outside of the military, extramarital sexual conduct between adults is generally not a criminal act. And even within the military, the President has instructed that such conduct only violates Article 134, UCMJ, when the accused "wrongfully" engages in it. *MCM* pt. IV, para. 99.b.(1). Of course, the accused's conduct must also satisfy the terminal element by being either prejudicial to good order and discipline, service discrediting, or both. *MCM* pt. IV, para. 99.b.(3). In the *Manual*, the President provides a lengthy description of extramarital conduct that satisfies these requirements. *MCM* pt. IV, para. 99.c.(1).

The President explains that service discrediting adultery "includes extramarital conduct that has a tendency, because of its open or notorious nature, to bring the Service into disrepute, make it subject to public ridicule, or lower

it in public esteem." *Id*. The President also notes, however, that "extramarital conduct that is private and discreet in nature may not be service discrediting by this standard." *Id*. To assist commanders in determining whether specific extramarital conduct violates Article 134, UCMJ, the President has provided an extensive, but nonexhaustive, list of factors that commanders should consider when determining whether extramarital conduct violates Article 134, UCMJ.[1]

---

[1] The factors include:

> (a) The accused's marital status, military rank, grade, or position;

> (b) The co-actor's marital status, military rank, grade, and position, or relationship to the armed forces;

> (c) The military status of the accused's spouse or the spouse of the co-actor, or their relationship to the armed forces;

> (d) The impact, if any, of the extramarital conduct on the ability of the accused, the co-actor, or the spouse of either to perform their duties in support of the armed forces

> (e) The misuse, if any, of Government time and resources to facilitate the commission of the conduct;

> (f) Whether the conduct persisted despite counseling or orders to desist; the flagrancy of the conduct, such as whether any notoriety ensued; and whether the extramarital conduct was accompanied by other violations of the UCMJ;

> (g) The negative impact on the units or organizations of the accused, the co-actor or the spouse of either of them, such as a detrimental effect on unit or organization morale, teamwork, and efficiency;

> (h) Whether the accused's or co-actor's marriage was pending legal dissolution, which is defined as an action with a view towards divorce proceedings, such as the filing of a petition for divorce; and

Accordingly, whether a servicemember's extramarital conduct constitutes a crime under Article 134, UCMJ, depends on the specific nature and circumstances of the charged conduct. Some extramarital conduct violates Article 134, UCMJ; other extramarital conduct does not. Because this is a fact-specific, multifactored, case-by-case determination, the Government must carry some burden of proving, beyond a reasonable doubt, that Appellant's extramarital conduct was of a nature to bring discredit upon the armed forces.[2] *See Phillips*, 70 M.J. at 164 ("It is established that conviction of a criminal offense under the Constitution requires proof of every element of the offense beyond a reasonable doubt."); *In re Winship*, 397 U.S. 358, 361-64 (1970). I turn, therefore, to the evidence the Government presented to the panel to determine whether the Government met its burden in this case.

## II. The Legal Sufficiency of Appellant's Conviction Under Article 134, UCMJ

Before this Court, the Government argued that various factors—including that Appellant shared the video of the victim online and lied to the victim about being married—made Appellant's behavior in conducting the affair "duplicitous, crass, flagrant, and exploitive." I take no issue with

---

> (i) Whether the extramarital conduct involves an ongoing or recent relationship or is remote in time.

*MCM* pt. IV, para. 99.c.(1)(a)-(i).

[2] It is worth noting that the President's guidance in the *Manual* also makes clear that the Government's burden to prove the terminal element will be different for other offenses under Article 134, UCMJ. For example, the *Manual* recognizes only two circumstances that will prevent the possession of child pornography from being criminal: (1) when the accused is "not aware that the images were of minors, or what appeared to be minors, engaged in sexually explicit conduct," and (2) when the facts demonstrate that the accused "unintentionally and inadvertently acquired" the child pornography. *MCM* pt. IV, para. 95.c.(5), (12). This difference likely reflects the fact that child pornography "harms and debases the most defenseless of our citizens," *United States v. Williams*, 553 U.S. 285, 307 (2008), and that its possession violates both federal law and the law of all fifty states and the District of Columbia.

this characterization of Appellant's conduct. But the fact that the Government is making this point for the first time now—years after Appellant's court-martial—only highlights and emphasizes the deficiency of the Government's argument at trial.

## A. Evidence Presented at Trial

During Appellant's court-martial, the Government largely ignored the terminal element of the Article 134 offense. Outside of evidence that Appellant had an extramarital affair, the Government presented no evidence on how Appellant's conduct was of a nature to discredit the armed forces. The Government never argued that the extramarital conduct was "open or notorious" or that it was otherwise service discrediting under the nine factors enumerated by the President in the *Manual*.

Unlike the Government, trial defense counsel did not neglect the terminal element of the Article 134 offense. During the defense's cross-examination of BF, the following exchange occurred:

> [Trial Defense Counsel:] Given that relationship, you do not think any less of the United States Air Force?
>
> [BF:] What, for having a relationship with him?
>
> [Trial Defense Counsel:] Right.
>
> [BF:] What do you mean?
>
> [Trial Defense Counsel:] Does it make you— you do not think any less of the United States Air Force, at large, based on your relationship with Airman Wells.
>
> [BF:] Just the relationship, minus if—
>
> [Trial Defense Counsel:] Yes
>
> [BF:] —he's accused of everything.
>
> [Trial Defense Counsel:] Your consensual sexual relationship with Airman Wells, you don't hold that against—
>
> [BF:] If he was a single man then I wouldn't— it's not their responsibility to stop someone

cheating, but it is to stop them from running around getting girls pregnant and beating them.

[Trial Defense Counsel:] *To be clear, as it relates to your consensual sexual relationship—*

[BF:] Yeah.

[Trial Defense Counsel:] *—you do not hold it against—*

[BF:] *No.*

[Trial Defense Counsel:] [T]he *U.S. Air Force.*

[BF:] *No.*

(Emphasis added.) Thus, the only evidence in the record that directly addressed whether Appellant's extramarital conduct was service discrediting was *contrary* evidence—BF, the victim of Appellant's actions, did *not* hold Appellant's conduct against the Air Force.

In its closing argument, the Government acknowledged this testimony, stating "[t]hankfully, [BF] is not willing to impute [Appellant's] conduct onto the Air Force at large. . . . She is mature enough to at least say . . . . I'm not going to hold [Appellant's conduct] against the Air Force." But even though the only evidence of the terminal element on the record was contrary evidence, the Government still did not argue why Appellant's conduct—when considered in light of the President's guidance in the *Manual*—was nonetheless service discrediting. The Government did not claim that Appellant's adultery was "open or notorious" or explain why the President's nine factors supported a finding of guilt. Instead, the Government merely expressed gratitude that Appellant's conduct did not actually injure the military's reputation, but reminded the panel that the military's reputation *could have been* injured. In the Government's view, this is all the law requires under *Phillips*. I am not willing to extend this Court's holding in *Phillips* that far.

### B. "Open or Notorious" Conduct

In concluding that Appellant's conviction was legally sufficient, the majority relies on the evidence that "Appellant showed a video of his extramarital sexual conduct to others and made it available to the general public to view

on a website." *United States v. Wells*, __ M.J. __, __ (6) (C.A.A.F. 2024). The majority concludes that because the "video depicts Appellant engaging in intimate sexual acts with BF, it is strong evidence of the 'open or notorious nature' of the extramarital conduct." *Id.*

My problem with this approach is twofold. First, I do not believe that the uploaded video establishes the "open or notorious" nature of Appellant's conduct as the majority suggests. The record indicates that when Appellant posted the video online, both his and BF's identities were anonymous. Neither Appellant nor BF was identifiable in the video, and the video provides no indication that Appellant had any connection to the United States military. Thus, while Appellant's extramarital sexual conduct was not purely private, its level of openness and notoriety was more trivial than the majority implies.

Second, and more importantly, the Government never argued at trial that the uploaded video established that Appellant's extramarital conduct was open or notorious, and it made no attempt to otherwise connect the video to the terminal element of the Article 134 offense. Instead, trial counsel focused on whether BF was actually the person in the video and whether she consented to Appellant recording her. But those arguments addressed the charge for unlawful recording or broadcasting under Article 120c, UCMJ, 10 U.S.C. § 920c (2018), for which Appellant was found not guilty. The Government never argued to the panel that the video made Appellant's extramarital conduct known to others, bringing disrepute and public ridicule upon the military. *See MCM* pt. IV, para. 99.c.(1) (explaining why open and notorious extramarital conduct is service discrediting).

### C. Appellant's Due Process Rights

To now accept the Government's "open or notorious" argument—or any of the other arguments the Government presents now on appeal—raises fundamental questions of fairness and due process. Because the Government never argued at trial that Appellant's extramarital conduct was service discrediting because it was committed in an open or notorious manner, Appellant was never given any notice of

the theory under which the Government now claims he was found guilty. Appellant therefore never had the opportunity at trial to introduce contrary evidence or to rebut the theory that his extramarital conduct was open or notorious. When pressed on this point at oral argument, Government counsel stated that "[the defense] could have attacked whether it was open and notorious . . . and if they failed to do so unconvincingly for a factfinder, that's how the justice system works." Oral Argument at 38:40-39:20, *United States v. Wells* (C.A.A.F. Mar. 6, 2024) (No. 23-0219). Under the Government's view, it has no obligation to present any evidence or argument with respect to the terminal element in any Clause 2, Article 134, case, but the accused has the burden to affirmatively refute *every possible theory* for why his extramarital conduct was service discrediting. I disagree with the Government that this is "how the justice system works."

As the Court reaffirmed in *Phillips*, "conviction of a criminal offense under the Constitution requires proof of every element of the offense beyond a reasonable doubt." 70 M.J. at 164 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *In re Winship*, 397 U.S. at 361-64)). And the terminal element in a Clause 2, Article 134, case is an element of the offense which "must be proved beyond a reasonable doubt like any other element." *Id.* at 165. The Supreme Court has made clear that the Constitution prohibits the government from shifting this burden to the accused. *Sandstrom v. Montana*, 442 U.S. 510, 523-24 (1979).

In this case, Appellant was convicted of violating Article 134, UCMJ, by engaging in extramarital conduct that was of a nature to discredit the armed forces. The President's guidance in the *Manual* instructs that such conduct may violate Article 134, UCMJ, in some circumstances but does not do so in other circumstances. The Government largely ignored the terminal element, neither arguing that Appellant's extramarital acts were conducted in an open or notorious manner or that they satisfied any of the other nine factors enumerated by the President for identifying violations of Article 134, UCMJ. As a result, the only evidence in the record directly related to the terminal element

was the coactor's testimony that Appellant's misconduct did not harm her views about the armed forces.

As I mentioned above, in its briefs and at oral argument before this Court the Government offered reasonable theories why Appellant's extramarital conduct was service discrediting. But this is neither the time nor the place for those arguments to be presented and litigated in the first instance. Due process requires a criminal defendant to be presented with a "meaningful opportunity" to defend himself. *Jackson v. Virginia*, 443 U.S. 307, 314 (1979). Appellant was denied that opportunity in this case. For that reason, I do not believe that Appellant's conviction for violating Article 134, UCMJ, was legally sufficient, and I respectfully dissent.

### III. Conclusion

For the foregoing reasons, I would reverse the decision of the United States Air Force Court of Criminal Appeals as to Appellant's conviction under Clause 2, Article 134, UCMJ.